COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


NUMBER 13-08-00073-CV


 IN RE: GRAYBAR ELECTRIC COMPANY, INC. 

 


On Petition for Writ of Mandamus


 




NUMBER 13-08-00294-CV



GRAYBAR ELECTRIC 

COMPANY, INC., Appellant,


v.



ALVARO GONZALEZ, ET AL., Appellees.

 


On appeal from the 93rd District Court of Hidalgo County, Texas.


 


NUMBER 13-08-00333-CV


 IN RE: GRAYBAR ELECTRIC COMPANY, INC., 

MIRA ENTERPRISES, INC., AND

 MARK STALLINGS, INC. 

 





On Petition for Writ of Mandamus

 




NUMBER 13-08-00341-CV


GRAYBAR ELECTRIC 

COMPANY, INC., Appellant,


v.



LAREDO HIX, L.P. AND

ALVARO GONZALEZ, Appellees.

 


On appeal from the 93rd District Court of Hidalgo County, Texas.


 




MEMORANDUM OPINION



Before Justices Rodriguez, Garza, and Vela


Memorandum Opinion by Justice Garza



 Appellant/relator, Graybar Electric Company ("Graybar"), alleges that the trial court
abused its discretion in denying its motion to partially dissolve or modify an injunction
granted in favor of appellees/real parties in interest, Alvaro Gonzalez and Laredo Hix, L.P.
("Laredo Hix"). By two issues in its first interlocutory appeal, cause number 13-08-00294-CV, (1) Graybar contends that the trial court abused its discretion in denying its motion
because: (1) the trial court did not have jurisdiction under the Texas Property Code, see
Tex. Prop. Code Ann. § 53.157(2) (Vernon 2007); and (2) the trial court did not have
subject matter jurisdiction to issue a temporary injunction pursuant to section 65.023 of the
civil practice and remedies code. See Tex. Civ. Prac. & Rem. Code Ann. § 65.023 (Vernon
1997). (2) In addition, Graybar petitions this Court for a writ of mandamus, in cause number
13-08-00073-CV, directing the Hidalgo County district court to set aside its order denying
Graybar's motion to abate, by which the court effectively asserts dominant jurisdiction. 

 By six issues, reorganized as four, Graybar alleges in its second interlocutory
appeal, cause number 13-08-00341-CV, that the trial court abused its discretion in granting
Laredo Hix's motion to extend the original temporary injunction. (3) Graybar, MIRA
Enterprises, Inc. ("MIRA"), and Mark Stallings Electric, Inc. ("Stallings") also petition this
Court for a writ of mandamus, in cause number 13-08-00333-CV, directing the Hidalgo
County district court to transfer the entire case to Webb County. We affirm the trial court's
judgment in cause number 13-08-00294-CV; we deny Graybar's petition for writ of
mandamus in cause number 13-08-00073-CV; we dismiss Graybar's appeal in cause
number 13-08-00341-CV; and we deny Graybar's second petition for writ of mandamus in
cause number 13-08-00333-CV. 

I. Factual and Procedural Background

 This case centers on the management and construction of a Holiday Inn Express
& Suites Hotel in Laredo, Texas. On January 18, 2007, HMC Hospitality Operating
Company ("HMC") filed suit against Gonzalez in Collin County, asserting claims for breach
of contract, declaratory judgment, quantum meruit, and attorney's fees with respect to
alleged breaches of various hotel management agreements between HMC and Gonzalez
pertaining to the Laredo Holiday Inn. The district court in Collin County transferred the
case to Hidalgo County on April 4, 2007, in response to a motion to transfer venue filed by
Gonzalez. 

 On May 23, 2007, Graybar (4) perfected a mechanic's lien against the Laredo Holiday
Inn and its owner, Laredo Hix, by filing its lien in the public records of Webb County. 
Graybar sought repayment for materials provided in the construction of the Laredo Holiday
Inn in the amount of $37,788.55.

 On June 22, 2007, Gonzalez filed an amended answer and counterclaim in the
Hidalgo County district court denying the allegations made by HMC, asserting various
affirmative defenses, and stating a counterclaim for fraud. Subsequently, Gonzalez filed
an application for a temporary restraining order and motions for temporary and permanent
injunctive relief in the Hidalgo County district court, seeking to enjoin HMC from
communicating with or litigating against Gonzalez.

 On July 20, 2007, The Gonzalez-DLS Family Limited Partnership and Brownsville
SB, L.P. filed an original petition in intervention in the Hidalgo County suit against HMC
seeking declaratory relief, damages for breach of contract and fraud, exemplary damages,
and attorney's fees pertaining to alleged material misrepresentations made by HMC to
induce Gonzalez to enter into various hotel management agreements for four separate
hotels in Pharr, McAllen, Brownsville, and Laredo. In addition, Ascension Hospitality
Management, L.L.C. filed a petition in intervention to join in Hidalgo County suit. 
Furthermore, all parties joined in Gonzalez's application for temporary injunction.

 On August 6, 2007, the Hidalgo County district court granted Gonzalez's application
for temporary injunction. In its order, the court restrained HMC "from continuing to harass,
threaten or communicate with the Gonzalez Group and the Gonzalez Group's employees,
agents, or representatives . . . ." The court also restrained HMC "from filing, initiating,
serving any process and from continuing any litigation against the Gonzalez Group and the
Gonzalez Group's employees, agents[,] and representatives . . . ." On August 23, 2007,
HMC filed notice of its accelerated interlocutory appeal which was assigned cause number
13-07-00518-CV. (5) 

 On September 24, 2007, Graybar filed an original petition in Webb County against
Stallings, MIRA, and Laredo Hix seeking to foreclose on the lien it filed on May 23, 2007,
asserting that the defendants had failed to timely pay balances due for materials furnished
for the construction of the Laredo Holiday Inn. (6) In its petition, Graybar contended that it
was owed $37,788.55 for materials provided. 

 On October 9, 2007, Laredo Hix filed an original petition in intervention with the
Hidalgo County district court. In its petition, Laredo Hix named sixteen parties as counter-defendants. Among the many counter-defendants were HMC, MIRA, Graybar, and
Stallings. Laredo Hix claimed that HMC was in breach of contract, was negligent, and had
breached a fiduciary duty owed to it. Additionally, Laredo Hix contended that Graybar,
MIRA, and Stallings were in breach of contract and had negligently carried out their duties
in the construction of the Laredo Holiday Inn. Laredo Hix also filed an application for a
temporary restraining order and requests for temporary and permanent injunctions to
prevent Graybar from pursuing its suit in Webb County until the Hidalgo County suit was
resolved. Also on October 9, 2007, Gonzalez filed a supplemental counterclaim, an
application for temporary restraining order, and requests for temporary and permanent
injunctions against Graybar which were virtually identical to those filed by Laredo Hix. (7)

 On November 2, 2007, the Hidalgo County district court granted the requests for
temporary injunction made by Gonzalez and Laredo Hix. The court specifically restrained
Graybar from (1) "continuing to harass, threaten or communicate with Laredo Hix, L.P.
and/or Alvaro Gonzalez, and their employees, agents, or representatives," and (2) "filing,
initiating, serving any process, and from continuing any litigation either criminal or civil
against Laredo Hix, L.P., and/or Alvaro Gonzalez, and their employees, agents and
representatives, except in this Court." The temporary injunction, which was in part an anti-suit injunction, was to last until May 12, 2008, when the matter was set for trial. 

 On November 8, 2007, Graybar filed a motion to partially dissolve or modify the
November 2, 2007 injunction and a verified plea in abatement with the Hidalgo County
district court. In support of its motion, Graybar attached a copy of its original petition in
Webb County against Stallings, MIRA, and Laredo Hix. (8) On January 2, 2008, after a
hearing, the Hidalgo County district court denied Graybar's motion and plea in abatement. 
Graybar perfected its appeal. (9) Graybar also filed a petition for writ of mandamus on
February 4, 2008, claiming that the trial court abused its discretion in denying its plea in
abatement because the Webb County district court has dominant jurisdiction over all
claims. 

 

 At a hearing on May 12, 2008, the Hidalgo County district court denied motions to
transfer venue filed by Graybar and other interested parties--namely, Harden Plumbing
Company, Inc., Pete Gallegos Paving, Inc., Stallings, and MIRA--and addressed a motion
to compel. However, the court did not commence a trial on the merits at this time. 
Nevertheless, the November 2, 2007 temporary injunction expired. On May 20, 2008,
Gonzalez and Laredo Hix filed an emergency motion to extend the November 2, 2007
temporary injunction until November 10, 2008, when the matter was scheduled for a trial
on the merits in Hidalgo County. The Hidalgo County district court granted the extension,
noting that "[a]ll findings set forth in this Court's Temporary Injunction Order dated
November 2, 2007 are incorporated by reference as if set forth fully herein." No other
changes were made to the temporary injunction.

 

 Graybar, MIRA, and Stallings filed a joint petition for writ of mandamus in cause
number 13-08-00333-CV on May 27, 2008, asserting that the venue provisions of the civil
practice and remedies code mandate venue in Webb County. See id. §§ 15.011, 15.012
(Vernon 2002). In conjunction with its motion for leave of court, which we granted earlier,
Graybar filed its notice of appeal in cause number 13-08-00341-CV on June 12, 2008. 

II. Cause Number 13-08-00294-CV


A. Appellate Jurisdiction

 

 Section 51.014(a)(4) of the civil practice and remedies code provides this Court with
interlocutory appellate jurisdiction if the district court "grants or refuses a temporary
injunction or grants or overrules a motion to dissolve a temporary injunction . . . ." Id. §
51.014(a)(4) (Vernon 2008). Here, the trial court denied Graybar's motion to dissolve or
modify an injunction. Therefore, we have jurisdiction over Graybar's interlocutory appeal. 
See id.

B. Standard of Review


 Whether to dissolve a temporary injunction is a matter lying within the trial court's
discretion. Cellular Mktg., Inc. v. Houston Cellular Tel. Co., 784 S.W.2d 734, 735 (Tex.
App.-Houston [14th Dist.] 1990, no writ); Tober v. Turner of Tex., Inc., 668 S.W.2d 831,
834 (Tex. App.-Austin 1984, no writ). On appeal, our review is limited to the question of
whether the trial court abused its discretion in denying Graybar's motion to dissolve. 
Walling v. Metcalfe, 863 S.W.2d 56, 58 (Tex. 1993). A clear failure by the trial court to
analyze or apply the law correctly will constitute an abuse of discretion. Walker v. Packer,
827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding).

 The trial court may modify a temporary injunction because of fundamental error or
changed circumstances, but it has no duty to reconsider the grant of a temporary injunction
if the movant fails to present new evidence showing fundamental error or changed
circumstances. Universal Health Servs., Inc. v. Thompson, 24 S.W.3d 570, 580 (Tex.
App.-Austin 2000, no pet.) (citing Henke v. Peoples State Bank, 6 S.W.3d 717, 721 (Tex.
App.-Corpus Christi 1999, pet. dism'd w.o.j.)). Fundamental error exists when "the record
shows the court lacked jurisdiction or that the public interest is directly and adversely
affected as that interest is declared in the statutes or the Constitution of Texas." Pirtle v.
Gregory, 629 S.W.2d 919, 920 (Tex. 1982). On the other hand, changed circumstances
"are conditions that altered the status quo existing after the temporary injunction was
granted or that made the temporary injunction unnecessary or improper." Henke, 6 S.W.3d
at 721.


C. Discussion


 1. Graybar's Mechanic's Lien in Webb County

 In its first issue, Graybar asserts that the Hidalgo County district court did not have
jurisdiction over its Webb County claims pursuant to section 53.157 of the Texas Property
Code. See Tex. Prop. Code Ann. § 53.157(2). Specifically, Graybar contends that Webb
County is the only county in which its foreclosure suit can be brought and maintained
because that is where the property is located. On the other hand, Gonzalez and Laredo
Hix argue that section 53.157 of the property code relates to venue of a mechanic's lien
foreclosure suit and not to subject matter jurisdiction. They further argue that the injunction
issued by the Hidalgo County district court does not require that Graybar pursue its
mechanic's lien foreclosure suit in Hidalgo County.

 Section 53.157 of the property code provides, in relevant part: "A mechanic's lien
or affidavit claiming a mechanic's lien filed under Section 53.052 may be discharged of
record by . . . failing to institute suit to foreclose the lien in the county in which the property
is located . . . ." Id. § 53.157(2) (emphasis added). (10) Moreover, section 53.154 states that
"[a] mechanic's lien may be foreclosed only on judgment of a court of competent
jurisdiction foreclosing the lien and ordering the sale of the property subject to the lien." 
Id. § 53.154 (Vernon 2007).

 It is undisputed that Graybar perfected its mechanic's lien by filing an affidavit in the
Webb County public records. The thrust of Graybar's argument pertaining to its
mechanic's lien is that the Hidalgo County district court's issuance of the anti-suit 
injunction essentially forbids Graybar from foreclosing on its lien because the property code
prevents it from instituting a foreclosure suit in Hidalgo County. We disagree.

 The part of the Hidalgo County district court's November 2, 2007 temporary
injunction, which is, in effect, an anti-suit injunction, provides, in relevant part:

 IT IS FURTHER ORDERED, that Counter-Defendants JUAN A. CASTILLO,
GRAYBAR ELECTRIC COMPANY, INC., GILBERT J. GUERRERO D/B/A
RIO DELTA ENGINEERING, PETE GALLEGOS PAVING, INC., SOLORIO
& ASSOCIATES, MARK STALLINGS ELECTRIC, INC., and their agents,
representatives, attorneys and those acting in concert therewith, are hereby
immediately restrained from filing, initiating, serving any process, and from
continuing any litigation either criminal or civil against the Laredo HIX, LP
and/or Alvaro Gonzalez, and their employees, agents and representatives,
except in this Court. 


 IT IS FURTHER ORDERED that this Temporary Injunction shall be valid for
the remainder of this litigation until a final trial on the merits shall take place
at 9 a.m., May 12, 2008.

 

 We do not find and Graybar has not directed us to, anything in the record
demonstrating that the Hidalgo County district court affirmatively asserted jurisdiction over
Graybar's suit pertaining to its mechanic's lien. The effect of the anti-suit injunction was
merely to abate Graybar's foreclosure suit until a trial on the merits occurred in the Hidalgo
County lawsuit. (11) See Golden Rule Ins. Co. v. Harper, 925 S.W.2d 649, 651 (Tex. 1996). 
We disagree with Graybar's contention that it has been "stripped of its right to bring suit to
foreclose its lien." Graybar has commenced its foreclosure suit in Webb County, and
based on the record before us, there is nothing preventing Graybar from prosecuting its
foreclosure suit after the Hidalgo County suit is resolved. Graybar has not provided any
citations to authority supporting its argument that the resolution of the Hidalgo County
lawsuit would eliminate its ability to ultimately foreclose on its mechanic's lien or that the
court's injunction required Graybar to foreclose on its mechanic's lien in Hidalgo County. 
See Tex. R. App. P. 38.1(h). Moreover, Graybar has not raised any issues pertaining to
changed circumstances. See Universal Health Servs., Inc., 24 S.W.3d at 580; Henke, 6
S.W.3d at 721. Therefore, we do not find any fundamental error in the Hidalgo County
district court's actions necessitating a modification or dissolution of the temporary injunction
issued. Accordingly, we overrule Graybar's first issue.

 2. Section 65.023 of the Texas Civil Practice and Remedies Code

 By its second issue, Graybar asserts that the trial court did not have subject matter
jurisdiction to issue the anti-suit injunction pursuant to section 65.023 of the civil practice
and remedies code. See Tex. Civ. Prac. & Rem. Code Ann. § 65.023. Specifically,
Graybar argues that section 65.023 requires that any injunction must be filed in Webb
County. See id. Conversely, Gonzalez and Laredo Hix contend that section 65.023 of the
civil practice and remedies code is not applicable because the Hidalgo County lawsuit is
not purely injunctive in nature. See id. 

 The principle of comity requires that courts exercise the power to enjoin foreign suits
"sparingly, and only in very special circumstances." Harper, 925 S.W.2d at 651. An anti-suit injunction may be justified when the injunction will prevent a multiplicity of suits or will
protect a party from vexatious or harassing litigation. Christensen v. Integrity Ins. Co., 719
S.W.2d 161, 163 (Tex. 1986); see Gannon, 706 S.W.2d at 307; see also Harper, 925
S.W.2d at 651 (holding that an anti-suit injunction is appropriate: (1) to address a threat
to the court's jurisdiction; (2) to prevent the evasion of important public policy; (3) to
prevent a multiplicity of suits; or (4) to protect a party from vexatious or harassing litigation). 
The issuance of an anti-suit injunction is within the sound discretion of the trial court. 
London Mkt. Insurers v. Am. Home Assurance Co., 95 S.W.3d 702, 705-06 (Tex.
App.-Corpus Christi 2003, no pet.).

 Graybar's second issue hinges upon the interpretation of section 65.023 of the civil
practice and remedies code. See Tex. Civ. Prac. & Rem. Code Ann. § 65.023. Specifically,
section 65.023, entitled "Place for Trial," provides:

 (a) Except as provided by Subsection (b), a writ of injunction against
a party who is a resident of this state shall be tried in a district or county court
in the county in which the party is domiciled. If the writ is granted against
more than one party, it may be tried in the proper court of the county in which
either party is domiciled.


 (b) A writ of injunction granted to stay proceedings in a suit or
execution on a judgment must be tried in the court in which the suit is
pending or the judgment was rendered.


Id.

 Graybar contends that the Hidalgo County district court was powerless to enjoin the
Webb County suit because section 65.023 mandates that a writ of injunction had to be filed
in Webb County. See id. We disagree.

 The Texas Supreme Court, in In re Continental Airlines, interpreted section 65.023
of the civil practice and remedies code, the injunction venue statute. 988 S.W.2d 733
(Tex. 1998) (orig. proceeding); see Tex. Civ. Prac. & Rem. Code Ann. § 65.023. The
supreme court noted that "the injunction venue statute applies only to suits in which the
relief sought is purely or primarily injunctive." In re Continental Airlines, 988 S.W.2d at 736
(emphasis added) (citing Ex parte Coffee, 160 Tex. 224, 328 S.W.2d 283, 287 (Tex. 1959)
(holding that the statute now codified as section 65.023 of the civil practice and remedies
code "only applies to and governs the issuance and return of writs and trial in cases in
which the relief sought is purely or primarily injunctive.")); see also In re Daniel, No. 12-06-00232-CV, 2006 Tex. App. LEXIS 7207, at *7 (Tex. App.-Tyler Aug. 16, 2006, orig.
proceeding) (suggesting that if the petition includes both a plea for declaratory judgment
and an injunction without any additional causes of action, then the primary purpose of the
suit is injunctive in nature). Furthermore, this Court has held in similar circumstances that
when "[t]he injunction granted by the court below was ancillary in nature," former article
4656 does not apply. (12) Ray v. Paulus, 489 S.W.2d 446, 449-50 (Tex. Civ. App.-Corpus
Christi 1972, no writ).

 This case is not purely injunctive in nature. In fact, the Hidalgo County district court
merely issued the injunction as a means to prevent a multiplicity of suits and vexatious or
harassing litigation. See id. at 450; see also Harper, 925 S.W.2d at 651. In applying
Graybar's logic, no trial court would be able to obtain subject matter jurisdiction to enjoin
another court from litigating a matter unless the enjoined court agreed to be enjoined. This
contention is not supported by case law on anti-suit injunctions. See Harper, 925 S.W.2d
at 651; Christensen, 719 S.W.2d at 163; Gannon, 706 S.W.2d at 305. 

 In support of its contention that section 65.023 prevented the Hidalgo County district
court from enjoining the Webb County lawsuit, Graybar relies heavily on this Court's
holding in Butron v. Cantu, 960 S.W.2d 91, 94-95 (Tex. App.-Corpus Christi 1997, no writ). 
However, we find the Butron decision to be factually distinguishable from this case.

 In Butron, a district court in Cameron County rendered a judgment against an
attorney for legal malpractice. Id. at 93. In response to this judgment, the attorney filed
an action in Hidalgo County to declare the Cameron County judgment void and later sought
a temporary injunction to prevent collection on a supersedeas bond posted with the
Cameron County district court. Id. The Hidalgo County district court subsequently issued
a temporary injunction prohibiting the collection of the supersedeas bond. Id. The issue
on appeal was the propriety of the Hidalgo County district court's grant of the attorney's
request for temporary injunction. Id. at 94. This Court held that, since the Cameron
County district court had rendered the judgment, only that court could enjoin collection on
the supersedeas bond. Id. at 95. There, injunctive relief was the primary relief sought by
the attorney in Hidalgo County to "prevent [appellant] from executing on that [Cameron
County] judgment." Id. Moreover, this Court specifically noted that "[s]ection 65.023 is
intended to ensure that comity prevails among the various Texas trial courts because
'orderly procedure and proper respect for the courts will require that . . . attacks upon their
judgments should be made in the court rendering such judgment, rather than in other
courts indiscriminately.'" Id. at 94 (quoting McVeigh v. Lerner, 849 S.W.2d 911, 914 (Tex.
App.-Houston [1st Dist.] 1993, writ denied)).

 We first note that Graybar has not secured a final judgment on its foreclosure suit
in Webb County. Here, unlike Butron, the temporary injunction sought by Gonzalez and
Laredo Hix in Hidalgo County was not pursued for the purpose of preventing Graybar from
collecting on a final judgment. (13) However, most importantly, the relief sought in the case
at bar is not primarily injunctive in nature. The temporary injunction in the present case is
merely ancillary to the primary relief sought--damages associated with various causes of
action, including breach of contract and breach of fiduciary duty, pertaining to the
management and construction of the Laredo Holiday Inn. See Karagounis v. Bexar County
Hosp. Dist., 70 S.W.3d 145, 146-47 (Tex. App.-San Antonio 2001, pet. denied) (holding
that because the true nature of the relief being sought was not purely injunctive but for
specific performance of a contract, section 65.023 of the civil practice and remedies code
did not apply). We believe this case is akin to Ray. See 489 S.W.2d at 449-50. Contrary
to Graybar's assertions, Texas courts have routinely authorized the issuance of anti-suit
injunctions to prevent a multiplicity of suits and to prevent vexatious or harassing litigation. 
See Harper, 925 S.W.2d at 651; Christensen, 719 S.W.2d at 163; Gannon, 706 S.W.2d
at 305. 

 We therefore do not find any fundamental error in the Hidalgo County district court's
issuance of the temporary injunction to maintain the status quo. See Butnaru v. Ford
Motor Co., 84 S.W.3d 198, 204 (Tex. 2002) (stating that the purpose of a temporary
injunction is to preserve the status quo of the litigation's subject matter pending a trial on
the merits); see also Harper, 925 S.W.2d at 651; Christensen, 719 S.W.2d at 163;
Gannon, 706 S.W.2d at 305. Accordingly, we conclude that the trial court did not abuse
its discretion in issuing the anti-suit injunction and denying Graybar's motion. We overrule
Graybar's second issue, and we affirm the judgment of the trial court.

III. Cause Number 13-08-00073-CV

 In its first petition for writ of mandamus, Graybar argues that the Hidalgo County
district court abused its discretion in denying its verified plea in abatement because the
Webb County district court has dominant jurisdiction. Graybar also claims that Gonzalez
and Laredo Hix engaged in impermissible "forum shopping." Gonzalez and Laredo Hix
argue that: (1) Hidalgo County has dominant jurisdiction over the Webb County lawsuit
because suit was commenced there first and the claims are interrelated; (2) the Webb
County lawsuit has not commenced because Laredo Hix has yet to be served; and (3)
Graybar has not introduced any evidence to support an abatement of the Hidalgo County
lawsuit. (14) 

A. Standard of Review

 Mandamus relief is available only to correct a "clear abuse of discretion" when there
is no adequate remedy by appeal. Walker, 827 S.W.2d at 839. Mandamus is appropriate
to resolve disputes over dominant jurisdiction. Perry v. Del Rio, 66 S.W.3d 239, 258 (Tex.
2001) (orig. proceeding) (citing Curtis v. Gibbs, 511 S.W.2d 263, 268 (Tex. 1974)). 
Moreover, mandamus relief may be granted when one court actively interferes with the
jurisdiction of another court. See In re Reliant Energy, Inc., 159 S.W.3d 624, 626 (Tex.
2005) (orig. proceeding). 

 The party bringing a plea in abatement must show: (1) the other suit (here, the
Webb County lawsuit) commenced first; (2) the suit is still pending; (3) the same parties
are involved; and (4) the controversies are the same. S. County Mut. Ins. Co. v. Ochoa,
19 S.W.3d 452, 468 (Tex. App.-Corpus Christi 2000, no pet.) (op. on reh'g). The movant
has the burden of proof to establish the allegations in his motion to abate. Flowers v.
Steelcraft Corp., 406 S.W.2d 199, 199 (Tex. 1966); S. County Mut. Ins. Co., 19 S.W.3d at
469.

 We review the trial court's action in granting or denying a plea in abatement using
an abuse of discretion standard. Wyatt v. Shaw Plumbing Co., 760 S.W.2d 245, 248 (Tex.
1988); Davis v. Guerrero, 64 S.W.3d 685, 691 (Tex. App.-Austin 2002, no pet.); S. County
Mut. Ins. Co., 19 S.W.3d at 468. The trial court abuses its discretion when it acts in an
unreasonable and arbitrary manner, or without reference to any guiding rules or principles. 
See Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).

B. The Doctrine of Dominant Jurisdiction & Venue

 The dominant jurisdiction doctrine applies when venue is proper in two or more
Texas counties or courts. Gonzalez v. Reliant Energy, Inc., 159 S.W.3d 615, 622 (Tex.
2005) (noting that the concept of dominant jurisdiction is not applicable in cases where
venue is not proper in more than one Texas county); Wyatt, 760 S.W.2d at 248. Dominant
jurisdiction recognizes "the plaintiff's privilege to choose the forum" and accepts that choice
as correct, provided "the forum is a proper one." Gonzalez, 159 S.W.3d at 622; Wyatt, 760
S.W.2d at 248; see Cleveland v. Ward, 116 Tex. 1, 285 S.W. 1063, 1070 (Tex. 1926) (orig.
proceeding), disapproved on other grounds by Walker, 827 S.W.2d at 843. 

 "The long-standing common law rule in Texas is that the first court to acquire
jurisdiction over the subject matter and the parties of a controversy has dominant
jurisdiction over all other courts." San Miguel v. Bellows, 35 S.W.3d 702, 704 (Tex.
App.-Corpus Christi 2000, pet. denied) (citing Cleveland, 285 S.W. at 1070); see Curtis,
511 S.W.2d at 267. "Where jurisdiction of a district court has attached, it has the power
to permit pleadings to be amended, new parties to be made, to determine all essential
questions, and to do anything with reference thereto authorized by law." San Miguel, 35
S.W.3d at 704 (citing Cleveland, 286 S.W. at 1069). Dominant jurisdiction excludes other
courts from exercising jurisdiction over the same case. Curtis, 511 S.W.2d at 267; San
Miguel, 35 S.W.3d at 704. Dominant jurisdiction requires "an inherent interrelation of the subject matter" in the
two suits before a plea in abatement must be granted in the second action. Wyatt, 760
S.W.2d at 248. It is not required that the exact issues and all the parties be included in the
first action before the second action is filed, provided that the claim in the first suit may be
amended to bring in all necessary and proper parties and issues. Id. at 247. In
determining whether an inherent interrelationship exists, courts should be guided by the
rule governing persons to be joined if feasible and the compulsory counterclaim rule. Id.

C. Discussion

 

 It is undisputed that the Hidalgo County district court has general subject matter
jurisdiction over all claims involved. See Tex. Const. art. V, § 8 (providing that the district
court has exclusive, original jurisdiction of "all actions, proceedings, and remedies," except
when the constitution or other law confers jurisdiction on some other court); Tex. Gov't
Code Ann. § 24.007 (Vernon 2000) ("The district court has the jurisdiction provided by
Article V, Section 8 of the Texas Constitution."); see also Gordon v. Jones, 196 S.W.3d
376, 381-82 (Tex. App.-Houston [1st Dist.] 2006, no pet.). Moreover, Graybar
acknowledges in its plea in abatement that the "Webb County Lawsuit is clearly inherently
interrelated with the Hidalgo County Lawsuit. . . . Both have the same subject matter--the
HOLIDAY INN-LAREDO." See Wyatt, 760 S.W.2d at 248. Therefore, the only issue
before us is which suit was filed first. 

 HMC filed its original petition with the Collin County district court on January 18,
2007, asserting various causes of action pertaining to an alleged breach of several hotel
management agreements regarding the Laredo Holiday Inn. The lawsuit was transferred
to Hidalgo County on May 21, 2007. It was not until September 24, 2007, that Graybar
filed its suit in Webb County to foreclose upon its mechanic's lien. Clearly, the Hidalgo
County lawsuit was filed first. 

 When suit is proper in more than one county, the court in which the suit is first filed
acquires dominant jurisdiction. Wyatt, 760 S.W.2d at 248. As long as the forum is proper,
it is the plaintiff's privilege to choose the forum. Id. "Defendants are not at liberty to
decline to do battle in the forum chosen by the plaintiff." Id. Therefore, because the
parties agree that the claims are interrelated and because the Hidalgo County lawsuit was
filed first, we conclude that the Hidalgo County district court has dominant jurisdiction over
the Webb County suit. (15) 

 Graybar, however, relies heavily on this Court's holding in San Miguel to support its
contention that Webb County has dominant jurisdiction over the involved claims. 35
S.W.3d at 703-05. In that case, San Miguel obtained a judgment against R.D. Bellows Law
Office ("Bellows") for damages of $513,000 in a Harris County district court. Id. at 703. 
After the judgment had become final, San Miguel filed an application for ancillary relief in
the Harris County district court seeking a turnover order and joining Bellows's wife, Suzette,
and the Bellows Law Firm, P.L.L.C. Id. Subsequently, Suzette and the P.L.L.C. obtained
an ex parte temporary restraining order in Live Oak County to prevent San Miguel from
proceeding with her collection efforts in Harris County. Id. at 704. Suzette and the
P.L.L.C. also filed an application for temporary injunction and a petition for declaratory
judgment. Id. This Court concluded that the Live Oak trial court abused its discretion in
issuing a temporary injunction enjoining San Miguel from pursuing her collection efforts
against Bellows in the Harris County trial court. Id. at 703, 705. 

 We find this case to be factually distinguishable. Unlike San Miguel, Graybar has
not secured a final judgment in Webb County. Further, the purpose of the Hidalgo County
district court's issuance of the temporary injunction and its denial of Graybar's plea in
abatement was not to prevent Graybar from enforcing a final judgment. Additionally, as
previously discussed, the claims involved are inherently interrelated and the Hidalgo
County lawsuit was filed first; therefore, Hidalgo County has dominant jurisdiction over the
claims involved. Finally, the claims asserted by Suzette and the P.L.L.C. were merely
injunctive in nature whereas the claims asserted by Gonzalez and Laredo Hix in the
Hidalgo County district court are not. See In re Continental Airlines, 988 S.W.2d at 736;
see also In re Daniel, 2006 Tex. App. LEXIS 7207, at *7 (suggesting that if the petition
includes both a plea for declaratory judgment and an injunction without any additional
causes of action, then the primary purpose of the suit is injunctive in nature).

 Graybar further argues that Gonzalez and Laredo Hix are engaging in impermissible
"forum shopping." See Reliant Energy, Inc., 102 S.W.3d at 875 ("Forum shopping is
against public policy . . . ."). Graybar has not cited to any authority stating that the Hidalgo
County district court was required to abate the Hidalgo County lawsuit for impermissible
"forum shopping." In any event, our review of the record does not yield a finding that
Gonzalez and Laredo Hix engaged in impermissible "forum shopping." Gonzalez and
Laredo Hix joined Graybar and several other counter-defendants in the underlying Hidalgo
County lawsuit because, as Graybar admits, these claims are interrelated. 

 In concluding that the Hidalgo County district court has dominant jurisdiction, we do
not find that Graybar's Webb County foreclosure lawsuit is extinguished; instead, it is
merely abated pending the resolution of the Hidalgo County lawsuit. Therefore, based on
the foregoing, we conclude that the Hidalgo County trial court did not abuse its discretion
in denying Graybar's motion to abate. Accordingly, we deny Graybar's petition for writ of
mandamus.


IV. Cause Number 13-08-00341-CV


 In its second interlocutory appeal, Graybar asserts that the trial court erred in
granting the motion to extend the November 2, 2007 temporary injunction filed by Gonzalez
and Laredo Hix. Specifically, Graybar contends that the temporary injunction should be
dissolved because: (1) it does not state the court's reason for issuing the injunction; (2)
it does not describe the acts sought to be restrained; (3) the trial court did not give Graybar
an opportunity to be heard, in violation of the Due Process Clause of the United States
Constitution, see U.S. Const. amend. XIV; and (4) the trial court did not have subject
matter jurisdiction to issue the order and Webb County has dominant jurisdiction over the
remaining claims. 

 Gonzalez and Laredo Hix argue that: (1) this Court does not have jurisdiction over
this appeal; (2) Graybar's alleged procedural violations do not apply to extensions of
temporary injunctions; (3) Graybar has already raised the issues of subject matter
jurisdiction and dominant jurisdiction in cause number 13-08-00294-CV, its first
interlocutory appeal; and (4) Graybar received "all the process to which it was due." 

A. Applicable Law

 

 An appellate court lacks jurisdiction to review an interlocutory order unless a statute
specifically authorizes such an appeal. Qwest Commc'ns Corp. v. AT&T Corp., 24 S.W.3d
334, 336 (Tex. 2000). Section 51.014 of the civil practice and remedies code provides that
a party may appeal from an interlocutory order of the trial court that "grants or refuses a
temporary injunction." Tex. Civ. Prac. & Rem. Code Ann. § 51.014. Texas courts,
however, have construed this provision to allow interlocutory review of an amended order
making a substantive modification to a temporary injunction. See Currie v. Int'l Telecharge,
Inc., 722 S.W.2d 471, 472 (Tex. App.-Dallas 1986, no writ) (deciding that a temporary
injunction was modified by restricting the area affected by a non-competition provision);
Toby Martin Oilfield Trucking, Inc v. Martin, 640 S.W.2d 352, 355 (Tex. App.-Houston [1st
Dist.] 1982, no writ) (finding that temporary injunction was modified by increasing the
amount of the bond); see also City of Lancaster v. Tex. Motor Transp. Ass'n, Inc., No. 05-05-00169-CV, 2005 Tex. App. LEXIS 7744, at *3 (Tex. App.-Dallas Sept. 22, 2005, no
pet.) (mem. op.) (concluding that the appellate court did not have jurisdiction to review a
temporary injunction where the sole modification was to extend the date until a trial on the
merits could be conducted); cf. Ludewig v. Houston Pipeline Co., 737 S.W.2d 15, 16 (Tex.
App.-Corpus Christi 1987, no writ) (holding that the trial court's order amending a
temporary injunction to include a new trial date is not an appealable order). We must
determine whether the extension of the temporary injunction in this case amounted to a
substantive modification.


B. Discussion


 The trial court's order extending the November 2, 2007 temporary injunction
specifically incorporated by reference the substantive findings contained in the original
November 2, 2007 temporary injunction. The lone change in the trial court's order was to
extend the duration of the injunction until the new trial setting of November 10, 2008. See
City of Lancaster, 2005 Tex. App. LEXIS 7744, at *3. As in City of Lancaster, no
substantive changes were made to the November 2, 2007 temporary injunction. See id. 

 Graybar relies heavily on the decisions in EMC Mortgage Corp. v. Jones, No. 05-06-

00419-CV, 2008 Tex. App. LEXIS 3270, at *5 (Tex. App.-Dallas May 7, 2008, no pet.) (op.
on reh'g); Webb v. Hartman Newspapers, Inc., 793 S.W.2d 302, 303 (Tex. App.-Houston
[14 th Dist.] 1990, no writ), and Herider Farm Processing, Inc v. City of Nacogdoches, 573
S.W.2d 297, 298-99 (Tex. Civ. App.-Tyler 1978, writ ref'd n.r.e.) for the proposition that an
extension is appealable because it is itself a temporary injunction. We disagree.

 The EMC Mortgage Corp. case involved the trial court's extension of an underlying
temporary injunction after a final judgment had been secured. 2008 Tex. App. LEXIS
3270, at **9-10. The Dallas Court of Appeals concluded that once a final judgment was
secured, under the circumstances involved, the underlying temporary injunction terminated;
therefore, the extension of the underlying temporary injunction constituted a new temporary
injunction. Id. at *14. In this case, we do not have a final judgment; instead, Graybar
challenges the temporary injunction on interlocutory appeal, for which our jurisdiction is
limited. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4). Therefore, EMC Mortgage
Corp. is not applicable. 

 In Webb, appellant Willis Webb appealed the trial court's extension of a temporary
injunction ordering him to comply with provisions on a covenant not to compete with his
former employer. 793 S.W.2d at 303. The Fourteenth Court of Appeals reviewed the
mertis of the temporary injunction without any discussion as to whether the trial court's
extension of the temporary injunction's duration constituted a substantive modification. Id.
at 305. Here, we have a unique situation in that we have reviewed the merits of the
temporary injunction in cause number 13-08-00294-CV, Graybar's first interlocutory
appeal. The only matter for review in this cause is the extension. Therefore, we find City
of Lancaster to be more on point in this cause, and we decline to follow Webb. 

 Finally, in Herider Farm Processing, appellant appealed the trial court's issuance of
a temporary injunction enjoining the City of Nacogdoches from terminating water and
sewer services for a period of fifteen days. 573 S.W.2d at 297. After a hearing on the
temporary injunction, the trial court concluded that appellant was entitled to injunctive relief
and granted appellant's motion for a temporary injunction for a period of fifteen days from
the date of the hearing. Id. at 298. Appellant subsequently filed a motion for extension of
the temporary injunction "until such time as the principal suit herein may be tried to a
conclusion." Id. The trial court denied appellant's motion. Id. On appeal of the temporary
injunction, the court of appeals noted that the crux of the disagreement between appellant
and appellee pertained to the length of time for which the trial court granted or should have
granted the injunction. Id. The court of appeals concluded that the trial court had abused
its discretion in granting the injunction for only a fifteen day period, reasoning that fifteen
days is insufficient to preserve the status quo. Id. at 299. 

 The Herider Farm Processing case is not directly analogous to the instant case. 
Although it was argued that the trial court had abused its discretion in denying its motion
to extend the temporary injunction, the court of appeals did not analyze the denial of the
motion to extend the temporary injunction. Id. at 298. Instead, the court analyzed the
original temporary injunction that the trial court had granted. Id. at 298-99. In doing so,
the court concluded that the duration of the original temporary injunction was insufficient
to maintain the status quo of the underlying suit, especially in light of the trial court's
conclusion that appellant had proven its rights to permanent injunctive relief. Id. at 299. 
Therefore, the court modified the duration of the original temporary injunction to last until
a trial on the merits. Id. Considering the court did not address appellant's motion to
extend the temporary injunction and instead addressed the trial court's grant of the original
temporary injunction, we do not find this case to be persuasive in this matter. See Tex.
Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (providing for an interlocutory appeal premised
on a grant or refusal to issue a temporary injunction).

 Graybar further argues that the holdings in Sweet v. Inkjet International, Ltd., No.
05-03-00233-CV, 2003 Tex. App. LEXIS 8539, at **6-8 (Tex. App.-Dallas Oct. 2, 2003, no
pet.) (mem. op.) (concluding that the trial court's amended temporary injunction clarifying
the term "contacting" constituted a second temporary injunction and, therefore, did not
interfere with the appellate court's jurisdiction), Ahmed v. Shimi Ventures, 99 S.W.3d 682,
688-89 (Tex. App.-Houston [1st Dist.] 2003, no pet.) (holding that an order modifying a
temporary injunction, including adding a provision applicable to insurers, reducing bond,
and changing some compliance dates, but not incorporating the original temporary
injunction by reference was a complete temporary injunction in itself), and Martin, 640
S.W.2d at 355 (involving a modified temporary injunction increasing the bond amount in
the original temporary injunction from $2,000 to $100,000) support its contention that in
changing the date of the temporary injunction, the Hidalgo County district court made a
substantive modification to the November 2, 2007 temporary injunction. We disagree.

 None of the cases cited by Graybar address a situation where a trial court has
extended a temporary injunction. Furthermore, none of the cases cited by Graybar stand
for the proposition that a mere changing of the date on the temporary injunction to
effectuate an extension constitutes a substantive modification. Thus, the cases relied upon
by Graybar are not persuasive in this matter. 

 Based on the foregoing, we conclude that the order falls outside the ambit of section
51.014(a)(4) of the civil practice and remedies code, and that we do not have jurisdiction
to review it. See id.; see also Tex. Civ. Prac. & Rem. Code § 51.014(a)(4). On June 10,
2008, Gonzalez and Laredo Hix moved to dismiss this appeal. Accordingly, we grant the
motion to dismiss filed by Gonzalez and Laredo Hix, and we dismiss this interlocutory
appeal. (16)

V. Cause Number 13-08-00333-CV


 In a second petition for writ of mandamus, Graybar, MIRA, and Stallings assert that
the trial court abused its discretion in denying their motions to transfer venue. Specifically,
they argue that sections 15.011 and 15.012 of the civil practice and remedies code are
mandatory venue provisions which necessitate trying the entire case in Webb County. See
Tex. Civ. Prac. & Rem. Code Ann. §§ 15.011, 15.012 (Vernon 2002). Gonzalez and
Laredo Hix counter by arguing that: (1) the mandatory venue provisions noted by Graybar
do not apply because venue in this case is governed by section 15.062 of the civil practice
and remedies code, see Tex. Civ. Prac. & Rem. Code Ann. § 15.062 (Vernon 2002); (2)
Graybar and MIRA are barred from obtaining a writ of mandamus because of waiver; and
(3) section 15.011 does not apply because the underlying suit does not involve the
recovery of property or quieting title, see id. § 15.011. 

A. Standard of Review


 As previously stated, the general rule is that mandamus relief is available only to
correct a "clear abuse of discretion" when there is no adequate remedy by appeal. Walker,
827 S.W.2d at 839. However, section 15.0642 of the civil practice and remedies code
provides that "[a] party may apply for a writ of mandamus with an appellate court to enforce
the mandatory venue provisions of this chapter." Tex. Civ. Prac. & Rem. Code Ann. §
15.0642 (Vernon 2002); see id. § 15.064 (Vernon 2002) ("No interlocutory appeal shall lie
from the determination [of a motion to transfer venue]."). The Texas Supreme Court has
held that parties bringing a mandamus under section 15.0642 to enforce the mandatory
venue provisions of the civil practice and remedies code need not demonstrate that they
lack an adequate remedy by appeal. In re Mo. Pac. R.R., 998 S.W.2d 212, 215 (Tex.
1999) (orig. proceeding) (citing In re Continental Airlines, 988 S.W.2d at 735). Instead, the
supreme court concluded that a party need only demonstrate that the trial court abused its
discretion. Id. at 216. Therefore, Graybar has properly raised this issue in its second
petition for writ of mandamus. 


B. Discussion

 Rule 86 of the Texas Rules of Civil Procedure provides that "[a]n objection to
improper venue is waived if not made by written motion filed prior to or concurrently with
any other plea, pleading or motion except a special appearance motion . . . ." Tex. R. Civ.
P. 86(1). 

 1. Graybar


 Graybar was first joined as a party to this matter when Laredo Hix filed its original
petition in intervention and Gonzalez filed his supplemental counterclaim on October 9,
2007. Graybar filed its motion to partially dissolve or modify the November 2, 2007
temporary injunction entered by the Hidalgo County trial court and its verified plea in
abatement. Subsequently, on November 20, 2007, Graybar filed its motion to transfer
venue and original answer subject thereto, contending that section 15.011 of the civil
practice and remedies code mandated venue in Webb County. See Tex. Civ. Prac. &
Rem. Code Ann. § 15.011. On March 19, 2008, Graybar filed a supplement to its
November 20, 2007 motion to transfer venue, asserting that section 15.012 of the civil
practice and remedies code also mandated venue in Webb County. See id. § 15.012; cf.
In re Pepsico, Inc., 87 S.W.3d 787, 794 (Tex. App.-Texarkana 2002, orig. proceeding)
("[A]n original timely motion to transfer venue may be amended to cure defects in the
original motion if the amended motion is filed before the trial court rules on the original
motion, and that the properly filed amended motion relates back to and supersedes the
original motion to transfer venue."). Because Graybar filed its motion to dissolve or modify
the temporary injunction and verified plea in abatement prior to its motion to transfer
venue, we conclude that Graybar has waived this contention. See Tex. R. Civ. P. 86(1). 
Therefore, Graybar is not entitled to mandamus relief. 2. MIRA


 In its motion to transfer venue filed on November 1, 2007, MIRA contended that
Eastland County was the proper venue for this matter. At no point did MIRA allege that
Webb County was the proper venue. Furthermore, MIRA did not make reference to either
sections 15.011 or 15.012 of the civil practice and remedies code in arguing that venue
was not proper in Hidalgo County. See Tex. Civ. Prac. & Rem. Code Ann. §§ 15.011,
15.012. Because this petition for writ of mandamus specifically alleges that sections
15.011 and 15.012 mandate venue in Webb County and because MIRA did not plead
those provisions in its motion to transfer venue and did not assert that venue should be in
Webb County, we conclude that MIRA has waived its venue contention. See Tex R. Civ.
P. 86(3)(b) (providing that a motion to transfer venue must "state that the action should be
transferred to another specified county of proper venue because . . . . Mandatory venue
of the action in another county is prescribed by one or more specific statutory provisions
which shall be clearly designated or indicated") (emphasis added); Wilson v. Tex. Parks
& Wildlife Dep't., 886 S.W.2d 259, 260-61 (Tex. 1994). Therefore, MIRA is not entitled to
mandamus relief. 3. Stallings


 Stallings filed its original motion to transfer venue on November 1, 2007, asserting
that section 15.011 mandated venue in Webb County. (17) See Tex. Civ. Prac. & Rem. Code
Ann. § 15.011. Stallings filed a first amended motion on November 1 2007, and a second
amended motion on November 15, 2007. (18) See In re Pepsico, Inc., 87 S.W.3d at 794. In
its first amended motion to transfer venue, Stallings specifically denied Laredo Hix's and
Gonzalez's venue facts suggesting that venue was proper in Hidalgo County, and it
contended that section 15.012 also mandated venue in Webb County. See id. § 15.012. 
Stallings filed a motion requesting a hearing on its motion to transfer venue on November
1, 2007. See Tex. R. Civ. P. 87(1) (providing, among other things, that "[t]he movant has
the duty to request a setting on the motion to transfer"). The Hidalgo County trial court
denied all pending motions to transfer venue after a hearing on May 12, 2008. (19) 

 Stallings argues that sections 15.011 and 15.012 mandate venue in Webb County. 
See Tex. Civ. Prac. & Rem. Code Ann. §§ 15.011, 15.012. We disagree.

 Section 15.011 of the civil practice and remedies code provides that:

 Actions for recovery of real property or an estate or interest in real property,
for partition of real property, to remove encumbrances from the title to real
property, for recovery of damages to real property, or to quiet title to real
property shall be brought in the county in which all or a party of the property
is located.


Id. § 15.011. (20) Additionally, section 15.012 of the civil practice and remedies code provides
that "[a]ctions to stay proceedings in a suit shall be brought in the county in which the suit
is pending." Id. § 15.012.

 We are, however, persuaded by the reasoning in Allison v. Fire Insurance
Exchange, 98 S.W.3d 227, 241-44 (Tex. App.-Austin 2002, pet. granted, judgm't vacated
w.r.m.). In Allison, the Austin Court of Appeals analyzed the applicability of section 15.011
of the civil practice and remedies code in a case involving actions for negligence,
negligence per se, breach of contract, deceptive trade practices, and breach of good faith
and fair dealing in insurance claims handling pertaining to water damage and mold
contamination of an entire house. Id.; see also Tex. Civ. Prac. & Rem. Code Ann. §
15.011. The Allison court stated the following:

 When considering venue, we note that the legislature's use of the word
"shall" in a statute generally indicates the mandatory character of the
provision. Because of the mandatory nature of section 15.011, we will strictly
construe it and will not hold that it applies unless [appellant's] suit falls clearly
within one of the categories in the section.


Allison, 98 S.W.3d at 241 (internal citations omitted).



 Here, Stallings argues that the phrase "recovery of damages of real property"
encompasses the claims made by Laredo Hix and Gonzales; therefore, venue is
mandatory in Webb County. As the Allison court properly noted, "[i]f we were to look at the
words 'recovery of damages to real property' in isolation, we would concede that the
phrase may be sufficiently broad to encompass the expansive reading urged by [appellee]. 
But we do not construe statutory phrases in isolation; we read statutes as a whole." Id. at
243. Furthermore, we must look to the "true" nature of the action to determine whether
section 15.011 applies. Id. (citing Renwar Oil Corp. v. Lancaster, 154 Tex. 311, 313, 276
S.W.2d 774, 775 (1955); Yzaguirre v. KCS Res., Inc., 53 S.W.3d 368, 371 (Tex. 2001)). 


 Before the addition of the phrase "recovery of damages to real
property," the venue provision applied only when the suit directly involved a
question of title to land. See, e.g., Yzaguirre, 53 S.W.3d at 371 (mandatory
venue provision does not apply because suit does not involve recovery of
real property or quieting title); Maranatha Temple, Inc. v. Enterprise Prods.
Co., 833 S.W.2d 736, 738 (Tex. App.-Houston [1st Dist.] 1992, writ denied);
Scarth v. First Bank & Trust Co., 711 S.W.2d 140, 141-42 (Tex.
App.-Amarillo 1986, no writ). We have been cited to no authority that
supports expanding the scope of the provision beyond questions relating to
the recovery of real property or affecting title to "land." Except to make it
explicit that the provision in question allows for the recovery of damages in
such a suit relating to land, there is no indication that the legislature sought
to broaden the provision with the addition of the phrase. That the phrase "for
recovery of damages to real property" was sandwiched between "to remove
encumbrances from the title" and "to quiet title" further bolsters our reading. 
Reading the relevant phrase in its entire context, then gives support for the
more narrow interpretation. See 1 Scott Brister, et al., Texas Pretrial
Practice § 9.34 (2000).


 Were we to interpret the provision to allow for mandatory venue in all
instances in which any damages are sought relating to a dwelling, no matter
the nature of the action, we believe we would be extending beyond
permissible bounds the statute's language. . . . The phrase must be
understood against the background of what the legislature was attempting
to accomplish in restoring a damage provision to the section, thereby
completing the availability of an array of remedies to actions involving "land."


Id.


 Here, Laredo Hix and Gonzalez brought actions against Stallings for breach of
contract and negligence in carrying out its duties in the construction of the Laredo Holiday
Inn. Stallings has not cited to any authority expanding the scope of section 15.011 beyond
questions relating to the recovery of real property or affecting title to "land." See Trafalgar
House Oil & Gas Inc. v. De Hinojosa, 773 S.W.2d 797, 798 (Tex. App.-San Antonio 1989,
no writ) (construing the identical statutory predecessor to section 15.011 and concluding
that "[i]t is not enough that the suit merely involves land; it must be a suit for the recovery
of land or damages thereto, or to quiet the title to land, or to prevent or stay waste on
land.") (quoting Canales v. Estate of Canales, 683 S.W.2d 77, 81 (Tex. App.-San Antonio
1984, no writ)). Because Laredo Hix's and Gonzalez's claims do not involve recovering
real property or quieting title or seeking damages for such loss, section 15.011 does not
apply. See Allison, 98 S.W.3d at 244. 

 Moreover, section 15.012 does not apply because we have previously concluded
that the Hidalgo County district court has dominant jurisdiction over this matter and that the
court was authorized to issue an anti-suit injunction with respect to the pending Webb
County claims in cause numbers 13-08-00294-CV and 13-08-00073-CV. See Fleming v.
Ahumada, 193 S.W.3d 704, 711-12 (Tex. App.-Corpus Christi 2006, no pet.). Given that
sections 15.011 and 15.012 do not apply in this case, we conclude that the trial court did
not abuse its discretion in denying Stallings's motion to transfer venue. Accordingly, we
deny Stallings's petition for writ of mandamus.


VI. Conclusion


 Accordingly, we affirm the trial court's judgment in cause number 13-08-00294-CV,
deny Graybar's petition for writ of mandamus in cause number 13-08-00073-CV, dismiss
Graybar's appeal in cause number 13-08-00341-CV, and deny Graybar's second petition
for writ of mandamus in cause number 13-08-00333-CV.


 

 DORI CONTRERAS GARZA,

 Justice


Memorandum Opinion delivered and 

filed this the 26th day of August, 2008. 

 




 
1. This interlocutory appeal is accelerated. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4)
(Vernon 2008); Tex. R. App. P. 28.1. 
2. On appeal, Graybar raises a third issue pertaining to dominant jurisdiction. However, Graybar raised
its dominant jurisdiction issue with the Hidalgo County district court in its plea in abatement. In its first petition
for writ of mandamus, Graybar takes issue with the propriety of the Hidalgo County district court's denial of
its plea in abatement. Therefore, we will address Graybar's dominant jurisdiction issue in our analysis of its
entitlement to a writ of mandamus in cause number 13-08-00073-CV.
3. On June 12, 2008, Graybar filed a motion for leave with this Court to re-file its notice of appeal in
cause number 13-08-00294-CV and to file its notice of appeal in cause number 13-08-00341-CV. In
conjunction with issuing this memorandum opinion, we GRANT Graybar's motion for leave.
4. Graybar was the supplier of electrical materials to the construction project.
5. On February 26, 2008, HMC Hospitality Operating Company ("HMC") filed an unopposed motion
to dismiss its appeal against Gonzalez. In this motion, HMC notified this Court that the parties in the original
appeal had successfully mediated their claims and that it sought to dismiss its appeal and that each party
would pay its own costs. This Court subsequently granted HMC's motion to dismiss in cause number 13-07-00518-CV on May 13, 2008. 
6. The record reflects that MIRA was the general contractor and Stallings was an electrical
subcontractor.
7. The record contains an affidavit executed by Gonzalez stating that he is the president of Laredo Hix.
8. On appeal, Laredo Hix contends that it was never served with notice of the Webb County suit filed
by Graybar; therefore, it argues, the suit cannot be considered to have commenced against it.
9. On January 18, 2008, Graybar filed notice of its accelerated interlocutory appeal of the trial court's
January 2, 2008 order, in cause number 13-07-00518-CV, essentially joining in HMC's original interlocutory
appeal. Realizing its error, Graybar filed an emergency expedited motion for severance on January 25, 2008. 
In this motion, Graybar moved this Court to sever its appeal from cause number 13-07-00518-CV and to
docket its appeal under a distinct cause number. This Court granted Graybar's motion for severance and
assigned its interlocutory appeal a new cause number--13-08-00294-CV.
10. Section 53.157 of the property code allows for the discharge of Graybar's mechanic's lien by five
other methods besides failure to institute a foreclosure suit in the county in which the property is located. See
Tex. Prop. Code Ann. § 53.157 (Vernon 2007). In any event, Graybar has already filed suit to foreclose its
mechanic's lien in Webb County. See id. § 53.158 (Vernon 2007) (providing that "suit must be brought to
foreclose the lien within two years after the last day a claimant may file the lien affidavit under Section 53.052
or within one year after completion, termination, or abandonment of the work under the original contract under
which the lien is claimed, whichever is later"); id. § 53.052 (Vernon 2007) (providing that "the person claiming
the lien must file an affidavit with the county clerk of the county in which the property is located . . . not later
than the 15th day of the fourth calendar month after the day on which the indebtedness accrues").
11. Gonzalez and Laredo Hix concede this fact on appeal.
12. Section 65.023 of the Texas Civil Practice and Remedies Code is the successor to both former
article 4656 of the Texas Revised Civil Statutes and article 4653 of the "Revised Civil Statutes of Texas 1911." 
Hughes v. Morgan, 816 S.W.2d 557, 559 (Tex. App.-Fort Worth 1991, writ denied); see Tex. Civ. Prac. &
Rem. Code Ann. § 65.023 (Vernon 2008).
13. Graybar also relies on Gardner v. Stewart, 223 S.W.3d 436, 437 (Tex. App.-Dallas 2006, pet.
denied) and McVeigh v. Lerner, 849 S.W.2d 911, 914 (Tex. App.-Houston [1st Dist.] 1993, writ denied) for
the contention that section 65.023 prevented the Hidalgo County district court from issuing the temporary
injunction. Specifically, Graybar argues that section 65.023 requires a party seeking to enjoin pending
litigation "must do so where the litigation is pending." However, like Butron v. Cantu, 960 S.W.2d 91, 94 (Tex.
App.-Corpus Christi 1997, no writ), the Gardner and McVeigh courts concluded that attacks on a judgment
must be made in the court that rendered the judgment and that a party cannot seek to enjoin a party from
enforcing a judgment issued in another district court. See Gardner, 223 S.W.3d at 437; McVeigh, 849 S.W.2d
at 914. As we have previously noted, Graybar has not secured a judgment in the Webb County lawsuit. 
Therefore, we do not find the Gardner or McVeigh cases to be persuasive in this matter.
14. Gonzalez and Laredo Hix also assert that Graybar is not entitled to a writ of mandamus because
it already has an adequate remedy at law--its interlocutory appeal. As previously noted, Graybar took issue
with the Hidalgo County district court's denial of its plea in abatement in its petition for writ of mandamus, not
in its interlocutory appeal. Moreover, section 51.014 of the civil practice and remedies code does not grant
this Court interlocutory appellate jurisdiction over a denial of a plea in abatement. See Tex. Civ. Prac. & Rem.
Code Ann. § 51.014. 

 

 Appeal is ordinarily an adequate remedy to review incidental rulings such as pleas in abatement. See
Wyatt v. Shaw Plumbing Co., 760 S.W.2d 245, 248 (Tex. 1988); see also In re Ayala, No. 13-07-140-CV, 2007
Tex. App. LEXIS 3319, at *6 (Tex. App.-Corpus Christi Apr. 27, 2007, orig. proceeding). However, the Texas
Supreme Court has held that mandamus is appropriate to resolve disputes over dominant jurisdiction. See
Perry v. Del Rio, 66 S.W.3d 239, 258 (Tex. 2001) (orig. proceeding) (citing Curtis v. Gibbs, 511 S.W.2d 263,
268 (Tex. 1974)). In addition, the supreme court, in Abor v. Black, denied mandamus relief requesting a court
to abate a case in deference to another court's dominant jurisdiction absent "any order [of the former court]
which actively interferes with the exercise of jurisdiction" by the court with dominant jurisdiction. 695 S.W.2d
564, 567 (Tex. 1985). The supreme court has not resolved these tests into one uniform test governing
mandamus relief pertaining to dominant jurisdiction issues. Here, the Webb County district court set a hearing
for December 6, 2007, to resolve an emergency plea in abatement and a motion filed by Stallings to dissolve
or modify the November 2, 2007 temporary injunction. Clearly, the setting of the December 6, 2007 hearing
date by the Webb County district court interferes with the exercise of jurisdiction by the Hidalgo County district
court. Under either test, Graybar does not have an adequate remedy by appeal and, therefore, it properly
raised this issue in its petition for writ of mandamus. See Perry, 66 S.W.3d at 258; Abor, 695 S.W.2d at 567. 
15. Though Graybar did, in fact, institute its Webb County suit before Laredo Hix's plea in intervention,
we must refer to the original Hidalgo County suit filed on January 18, 2007. See Wyatt, 760 S.W.2d at 247. 
This is so because Laredo Hix, through its plea in intervention, effectively amended the Hidalgo County suit
to join all necessary parties, and Graybar did not challenge the joinder in the trial court. See id.; see also Tex.
R. Civ. P. 39 (providing that a person subject to service of process shall be joined as a party if (1) in his
absence complete relief cannot be accorded to those already made parties or (2) he claims an interest relating
to the subject of the action and is so situated that the disposition of the action in its absence may "(i) as a
practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already
parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by
reason of his claimed interest"); R. 40 (providing that defendants may be joined in one action if the assertions
against them arise "out of the same transaction, occurrence, or series of transactions or occurrences and if
any question of law or fact common to all of them will arise in the action.").
16. Given our disposition, we need not address Graybar's remaining issues in cause number 13-08-00341-CV. See Tex. R. App. P. 47.1.
17. The November 1, 2007 motion to transfer venue was the first pleading filed by Stallings in the trial
court; therefore, we do not have for review any issues pertaining to the due order of pleading rule with respect
to Stallings. See Tex. R. Civ. P. 86(1).
18. In its second amended motion to transfer venue, Stallings made a convenience argument which
was not briefed on appeal.
19. The Hidalgo County trial court's order denying the motions to transfer venue includes a handwritten
message stating that the hearing on the motions was held on February 12, 2008. However, the order denying
the motions was signed and the reporter's record reflects that the hearing was conducted on May 12, 2008.
20. Section 15.011 of the civil practice and remedies code is a mandatory venue provision. See In re
Applied Chem. Magnesias Corp., 206 S.W.3d 114, 119 (Tex. 2006) (orig. proceeding); see also Tex. R. Civ.
P. 87(2).